Judge Tiffany M. Cartwright

FILED ____ LODGED
____ RECEIVED

JUN 09 2025

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW RANDALL PING,<br><br>Defendant. | NO. CR25-5137 TMC<br><br>**PLEA AGREEMENT** |

The United States, through Acting United States Attorney Teal Luthy Miller and Assistant United States Attorney Dane A. Westermeyer of the Western District of Washington and Matthew Randall Ping and Ping's attorney Lindsay J. McCaslin enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in an Information.

Plea Agreement - 1
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2. **The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charges contained in the Information.

    a. Wire Fraud, as charged in Count 1 of the Information, in violation of Title 18, United States Code, Section 1343; and

    b. Filing a False Tax Return, as charged in Count 2 of the Information, in violation of Title 26, United States Code, Section 7206(1)

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3. **Elements of the Offenses.** The elements of the offenses to which Defendant is pleading guilty are as follows:

    a. The elements of Wire Fraud, as charged in Count 1, are as follows:

*First*, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property, by means of false or fraudulent pretenses, representations or promises;

*Second*, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

*Third*, the defendant acted with the intent to defraud, that is, with the intent to deceive and cheat; and

*Fourth*, the defendant used, or caused to be used, the interstate wires to carry out, or attempt to carry out, an essential part of the scheme.

    b. The elements of the offense of Filing a False Tax Return, as charged in Count 2, are as follows:

*First*, the defendant made and subscribed a return, statement, or other document that was false as to a material matter;

Plea Agreement - 2
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Second,* the return, statement or other document contained a written declaration that it was made under penalty of perjury;

*Third,* the defendant did not believe the return, statement or other document to be true as to every material matter; and

*Fourth,* the defendant acted willfully.

4. **The Penalties.** Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a. For the offense of Wire Fraud, a term of imprisonment of up to twenty years; a fine of up to $250,000 or twice the gross pecuniary gain to the defendant or the gross pecuniary loss to the victims of the offense; a period of supervision following release from prison of up to three years; and a mandatory $100 special assessment. If Defendant receives a sentence of probation, the probationary period could be up to five years.

b. For the Offense of Filing a False Tax Return, a term of imprisonment of up to three years, a fine of up to $250,000 or twice the gross pecuniary gain to the defendant or the gross pecuniary loss to the victims of the offense; a period of supervision following release from prison of up to one year; and a mandatory $100 special assessment. If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Plea Agreement - 3
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

5. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

6. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

    a.    The right to plead not guilty and to persist in a plea of not guilty;

Plea Agreement - 4
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1	        b.       The right to a speedy and public trial before a jury of Defendant's
2	peers;
3	        c.       The right to the effective assistance of counsel at trial, including, if
4	Defendant could not afford an attorney, the right to have the Court appoint one for
5	Defendant;
6	        d.       The right to be presumed innocent until guilt has been established
7	beyond a reasonable doubt at trial;
8	        e.       The right to confront and cross-examine witnesses against Defendant
9	at trial;
10	        f.       The right to compel or subpoena witnesses to appear on Defendant's
11	behalf at trial;
12	        g.       The right to testify or to remain silent at trial, at which trial such
13	silence could not be used against Defendant; and
14	        h.       The right to appeal a finding of guilt or any pretrial rulings.
15	    7.    **United States Sentencing Guidelines.** Defendant understands and
16	acknowledges that the Court must consider the sentencing range calculated under the
17	United States Sentencing Guidelines and possible departures under the Sentencing
18	Guidelines together with the other factors set forth in Title 18, United States Code,
19	Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the
20	history and characteristics of Defendant; (3) the need for the sentence to reflect the
21	seriousness of the offense(s), to promote respect for the law, and to provide just
22	punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence
23	to criminal conduct; (5) the need for the sentence to protect the public from further
24	crimes of Defendant; (6) the need to provide Defendant with educational and vocational
25	training, medical care, or other correctional treatment in the most effective manner; (7)
26	the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the
27	need to avoid unwarranted sentence disparity among defendants involved in similar

Plea Agreement - 5
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

      a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

      b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

      c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

      d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8.    **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

9.    **Statement of Facts.** Defendant admits Defendant is guilty of the charged offenses. The parties agree on the following facts:

      a.    *Ping's Embezzlement from OAH:* Between 2009 and June 2023, Ping was employed at the Washington State Office of Administrative Hearings ("OAH"). By 2017, OAH promoted Ping to a Management Analyst position.

      b.    As a Management Analyst at OAH, Ping was designated as credit card custodian for OAH. According to internal OAH policy, the credit card custodian was responsible for developing and maintaining the security of OAH's credit cards, ensuring OAH adherence to credit card policies, collecting receipts, reconciling invoices, and other tasks related to managing and monitoring OAH's credit card use. Throughout his scheme, Ping utilized his role as credit card custodian for OAH to enable his fraud and hide the scope of his theft from other OAH employees.

c. In July 2019, Ping opened an account with the payment processor Square (the "Square Account"). Ping listed his own address, date of birth, email address, name, and social security number as the subscriber information for the Square Account, and linked his bank accounts to the Square Accounts. However, Ping created and used three different display names for the Square Account that Ping designed to create the false appearance that the Square Account was associated with legitimate vendors.

d. Between 2019 and 2021, Ping secretly charged more than $330,000 to OAH credit cards for purported payments to these fictitious vendors using the Square Account.

e. In 2021, Ping stopped using Square but continued his fraud through payment processing company Intuit. In August 2021, Ping opened an account with Intuit using the display name SRBC Consulting (the "Intuit Account"). Ping listed his name and bank account information in the subscriber information for the Intuit Account. Like the display names Ping created for the Square Account, Ping used the display name SRBC Consulting to give the false appearance that the Intuit Account was associated with a legitimate vendor. Ping also registered a business named SRBC Consulting with the Washington Department of Revenue using his name and address.

f. Between 2021 and 2023, Ping secretly caused OAH to transfer approximately $530,000 in OAH funds to the Intuit account by charging OAH's credit card for purported payments to SRBC Consulting.

g. None of the charges that Ping made on the Square Account or the Intuit Account using OAH's credit card were made for legitimate services or products provided to OAH. Ping transferred the funds provided by Square and Intuit as a result of these OAH credit card charges to his own bank accounts, and used the funds for his own purposes.

Plea Agreement - 7
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h. Between 2019 and 2023, Ping also used OAH's credit cards directly for unauthorized personal purchases at Verizon and Walmart. Ping charged a total of $17,359 on OAH's credit cards for these personal purchases.

i. Throughout his scheme, Ping made efforts to conceal his fraud from OAH by disregarding OAH's policies and procedures, and by hiding information about his fraud from other OAH employees. As one example, OAH required credit card transactions to be reviewed and approved by multiple OAH employees before OAH made payments on the credit card accounts. To hide his fraudulent transactions from that review process, Ping downloaded incomplete credit card transaction reports that omitted his fraudulent transactions and submitted those incomplete transaction reports to other OAH employees for review and approval. Once the legitimate transactions were reviewed and paid down through the correct approval process, Ping would circumvent OAH's approval process for the remaining fraudulent transactions by uploading, approving, and releasing payments for those transactions by himself without oversight from other employees.

j. Ping also manipulated OAH's internal accounting data to further conceal his scheme. OAH policies and practice required that credit card payments be documented via sequential batch numbers, and another OAH employee was responsible for reviewing all batch payments. However, after OAH made legitimate credit card payments under a certain batch number, Ping would log his payments for fraudulent credit card transactions using a batch payment number that duplicated the batch payment number for the legitimate payment. This batch number duplication allowed Ping to conceal his fraudulent payments because the OAH employee responsible for reviewing payment batches was unable to notice that there were batch payment numbers that the employee had not reviewed.

k. As OAH's credit card custodian, Ping was the only employee at OAH with access to OAH's online credit card account and monthly credit card

Plea Agreement - 8
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

statements. He was also responsible for reconciling OAH's credit card activity and collecting supporting documentation and receipts for credit card transactions. During his scheme, he did not perform these functions in an effort to hide his fraud from OAH.

l. In all, Ping secretly executed at least 210 credit card transactions on the Square and Intuit accounts that charged at least $860,756 on OAH's accounts. Ping also charged $17,359 on OAH credit cards for personal purchases. In total, Ping's conduct caused at least $878,115 in losses to OAH between 2019 and 2023. Ping personally obtained proceeds of at least $878,115 from the fraud scheme.

m. *Use of the Interstate Wires:* Ping used interstate wires in various ways in the course of his fraud. For example, when Ping used OAH's U.S. Bank credit cards from Washington for transactions on Square or Intuit, Ping caused wire transmissions that originated at his location in the Western District of Washington and travelled to U.S. Bank's servers, which are maintained outside of Washington. One such incident occurred on May 10, 2023, when Ping initiated a wire transmission on the Intuit Account originating in Olympia, Washington and terminating outside of Washington that caused a $10,000 charge to be issued on OAH's U.S. Bank credit card account.

n. By the foregoing conduct, Ping, with intent to defraud, devised and executed a scheme and artifice to defraud by means of materially false and fraudulent pretenses and representations. Ping used, and caused to be used, interstate wire transmissions in furtherance of the scheme to defraud.

o. *Ping's Fraudulent Tax Returns:* The payments Ping made to himself were taxable income. However, Ping did not report this income on his Form 1040 individual tax returns for the tax years 2020 through 2023. For each of these years, Ping willfully made and subscribed a tax return under penalty of perjury that he did not believe to be true and correct as to every material matter.

p. For example, on April 23, 2023, Ping filed a Form 1040 tax return for the tax year 2022, which was verified by a written declaration that it was made under

Plea Agreement - 9
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the penalties of perjury. Ping reported that his adjusted gross income for the tax year 2022 totaled $329,810.00. Ping willfully failed to report that he had received an additional $289,950.50 in income from his employer that year through the embezzlement scheme described above.

  q. Ping's failure to accurately report his income resulted in a total of an additional $240,247 in tax due and owing. The following table sets out the amount of unreported income, and the additional tax due and owing, for each year:

|  | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|
| **Unreported Income** | $248,282.88 | $92,742.72 | $289,950.50 | $182,300.00 |
| **Due and owing** | $75,495.00 | $22,066.00 | $89,063.00 | $53,623.00 |

  The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

  10. **Tax Loss Amount.** The United States and Defendant stipulate and agree that the correct amount of tax loss for purposes of sentencing is $240,247. Defendant understands that this Plea Agreement does not preclude the Internal Revenue Service from assessing and determining any additional civil tax, penalties, and/or interest that may be owed by Defendant. In addition, Defendant understands that Defendant is required to pay costs of prosecution.

  11. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

    a. With respect to Count 1:

     i. A base offense level of seven, pursuant to USSG § 2B1.1(a)(1);

Plea Agreement - 10
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ii. An increase of 14 levels because the loss exceeds $550,000, pursuant to USSG § 2B1.1(b)(1)(H); and

iii. An increase of two levels because the offense involved a breach of a position of trust, pursuant to USSG § 3B1.3.

b. With respect to Count 2:

i. A base offense level of 16 because the tax loss exceeds $100,000, pursuant to USSG § 2T1.1 and 2T4.1; and

ii. An increase of two levels because the defendant failed to identify a source of income exceeding $10,000 in any year from criminal activity, pursuant to USSG § 2T1.1(b)(1).

c. Adjustment for multiple counts: The offense group described in Paragraph b is from 5 to 8 levels less serious than the offense group described in Paragraph a, resulting in 1.5 offense units under USSG § 3D1.4(a). Accordingly, pursuant to USSG § 3D1.4, there is a one-level enhancement to the offense level calculated in Paragraph a.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines, including, but not limited to, whether Defendant's offense level for Count 1 should be increased by two levels pursuant to USSG § 2B1.1(b)(10)(C) because the offense involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

12. **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three

Plea Agreement - 11
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

13. **Zero-Point Offender Eligibility.** Defendant may be eligible for a sentencing adjustment pursuant to the Zero-Point Offender provisions at USSG § 4C1.1(a)(1)-(10). If, at the time of sentencing, the United States is satisfied Defendant has met each of the ten requirements, the United States will recommend a two-level reduction to Defendant's sentencing calculation pursuant to USSG § 4C1.1(a). Defendant understands, however, that the Court will ultimately decide whether Defendant qualifies as a Zero-Point Offender.

14. **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of no more than 33 months. Defendant is free to make any recommendation permitted by law. Defendant understands that these recommendations are not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

15. **Restitution.** Defendant shall make restitution to the Washington State Office of Administrative Hearings in the amount of $878,115, and to the United States Treasury in the amount of $240,247, with credit for any amounts already paid.

    a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the

Plea Agreement - 12
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy Defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that Defendant is unable to make immediate restitution.

        b.      Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview; and (7)

Plea Agreement - 13
*United States v. Matthew Randall Ping*, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

c. The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

16. **Forfeiture of Assets.** Defendant understands that the forfeiture of assets is part of the sentence imposed in this case.

Defendant agrees to forfeit to the United States immediately all of Defendant's right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the wire-fraud scheme charged in Count 1 of the Information. This property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), and includes, but is not limited to, a judgment for a sum of money (also known as a forfeiture money judgment) in the amount of $878,115, reflecting the proceeds Defendant obtained as a result of the wire-fraud scheme charged in Count 1.

Defendant further agrees to forfeit to the United States immediately all of Defendant's right, title, and interest in any property used or intended to be used in committing the offense of *Filing a False Tax Return*, as charged in Count 2 of the Information. This property is subject to forfeiture pursuant to Title 26, United States Code, Sections 7301 and 7302, by way of Title 28, United States Code, Section 2461(c).

Defendant understands and acknowledges that any property forfeited will be separate and distinct from any restitution that is ordered in this case. Defendant further understands and acknowledges to request restoration, the United States Attorney's Office (the "USAO") must send a request to the Money Laundering and Asset Recovery Section ("MLARS") of the Department of Justice, that includes the representations outlined in the Asset Forfeiture Policy Manual (2023), Chapter 14, Sec. II.B. and 28 C.F.R. Part 9.8,

Plea Agreement - 14
*United States v. Matthew Randall Ping*, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

which are summarized as follows: (i) all known victims have been properly notified of the restitution proceedings and are properly accounted for in the restitution order; (ii) to the best of the USAO's knowledge and belief after consultation with the seizing agency, the losses described in the restitution order have been verified, comport with the remission requirements, and reflect all sources of compensation received by the victims, including returns on investments, interest payments, insurance proceeds, refunds, settlement payments, lawsuit awards, and any other sources of compensation for their losses; (iii) to the best of the USAO's knowledge and belief after consultation with the seizing agency, reasonable efforts to locate additional assets establish that the victims do not have recourse reasonably available to obtain compensation for their losses from other assets, including those owned or controlled by the defendant(s); and (iv) there is no evidence to suggest that any of the victims knowingly contributed to, participated in, benefitted from, or acted in a willfully blind manner, toward the commission of the offenses underlying the forfeiture or a related offense. The USAO agrees that if it can make these required representations, then the USAO will submit a restoration request to MLARS, seeking approval for any assets forfeited to be restored to the victims in this case, which may, in turn, satisfy in full or part any restitution order. Defendant further understands and acknowledges that the Attorney General, or his/her designee, has the sole discretion to approve or deny the restoration request. The United States also agrees that the amount Defendant pays toward restitution will be credited against this forfeited sum.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effectuate such forfeiture; assisting in bringing any assets located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed,

Plea Agreement - 15
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any of the above-described property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated.

The United States reserves its right to proceed against any remaining assets not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if such property constitutes or derives from proceeds of the wire-fraud scheme set forth in Count 1, or was used or intended for use in committing the offense set forth in Count 2.

17. **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

18. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States Attorney's Office for the Western District of Washington has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

Plea Agreement - 16
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

19. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and/or (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant and/or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

20. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea(s) required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial

sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable). This includes any procedural challenges to the sentence, including any claim that the procedure employed at sentencing violated Defendant's constitutional rights.

Defendant also agrees that, by entering the guilty plea(s) required by this Plea Agreement, Defendant waives any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation or a claim of prosecutorial misconduct based on facts unknown or not reasonably discoverable prior to entry of the judgment of conviction.

Defendant acknowledges that certain claims, including certain claims for prosecutorial misconduct, will be barred by operation of law by virtue of their guilty plea, independently from this Plea Agreement. This waiver does not preclude Defendant from bringing an appropriate motion to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to claims not subject to the waiver, above) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

21. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

Plea Agreement - 18
United States v. Matthew Randall Ping, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

22. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, or Defendant withdraws from this Plea Agreement after it has been accepted by the Court, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office; or (3) thirty days following the grant of a motion to withdraw from the Plea Agreement.

23. **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 9th day of June, 2025.

MATTHEW RANDALL PING
Defendant

LINDSAY J. MCCASLIN
Attorney for Defendant

DANE A. WESTERMEYER
Assistant United States Attorney

Plea Agreement - 19
*United States v. Matthew Randall Ping*, CR25-5137 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970