THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR25-5137-TMC |
| Plaintiff, | ) | |
| v. | ) | DEFENSE SENTENCING MEMORANDUM |
| MATTHEW RANDALL PING, | ) | (Sent. Hrg: Sept. 11, 2025 @ 1:30 p.m.) |
| Defendant. | ) | **FILED UNDER SEAL** |

Matt is tremendously sorry for his actions. He embezzled over $878,000 from the state agency that he had worked at for 14 years. It's a job he loved, and between 2019 and 2023, he violated the trust of the public and many people he cared about.

Unlike many fraud cases, this case isn't about greed; it's about addiction. Matt didn't gamble to make money; he needed money to gamble. This distinction is critical to understanding how Matt got here, determining what sentence is sufficient but not greater than necessary, and how Matt will move forward paying restitution and rebuilding his life.

Since the fraud came to light in 2023, Matt's path to addressing the addiction and the harms he caused has been difficult, but one that he is committed to. He has not set foot in a casino in over a year and has refrained from all gambling. He has a counselor who specializes in gambling addiction that he sees for individual counseling and group counseling each week, and attends Gamblers Anonymous meetings. He has

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

been working to understand himself better, understand what triggered him to gamble, and what emotional value it provided so that he can move forward and make amends.

Because of the substantial consequences of his felony convictions, his remorse, and his dedication to treatment and paying restitution, the defense respectfully requests a sentence of 5 years' probation with 12 months of home-electronic monitoring, 250 hours of community service, and continued counseling. Compared to the three-year term permitted under supervised release, a sentence of probation grants the Court two additional years to monitor him. Given the amount of debt, the lengthier period will help ensure that Matt remains on the right track. Perhaps most importantly, it provides a heightened incentive for Matt to stay on the right track because the penalties for violating probation can be much more severe than those of supervised release. If Matt were to return to gambling or not follow the rules of probation, the Court has a second chance to sentence him, up to the maximum 20 years of imprisonment for wire fraud.

## I.     PERSONAL HISTORY AND CHARACTERISTICS

### A.     Matt grew up with a loving mother and grandmother, but alcoholism impeded healthy relationships and left him feeling isolated.

Matt's father was an abusive alcoholic who couldn't bother being a dad. Matt's parents divorced when he was five years old. His mom moved with Matt and his baby brother from Oregon to Washington. Matt never saw his father again and never even talked to him on the phone. His mother didn't prevent communication; his father just disappeared from his life. Matt doesn't have many memories of his father before that, but he remembers his dad throwing a landline telephone at his mother. His father probably wasn't a safe adult to be around as a boy, but as a child, he missed having a dad. Even with Boy Scouts and baseball, he yearned for a dad to play catch with, to teach him to fish, and to have a male role model. He missed that father/son bond that he saw other kids have.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

In Washington, Matt was raised by his mom and maternal grandmother, who lived next door to each other. His mom worked a lot to pay for food and put a roof over his head. When she wasn't working though, she drank excessively. Ex. 1 at 1, 3. She didn't have the violent tendencies when drunk that his father had, but her drinking interfered with his childhood in other ways. Instead of learning to communicate in healthy ways or have conversations of substance, she used "baby talk" even as he grew up, which only alienated him. He knew he couldn't rely on her if something came up at the last minute because her intoxication would get in the way. If he needed a ride as a teen or got a flat tire, he knew he couldn't call his mom because she wouldn't be sober enough to drive. Her drinking has caused ongoing issues in their relationship.

When Matt was nine years old, his mom remarried. Unfortunately, whatever hopes 9-year-old Matt harbored for finally having a dad were short lived. The relationship only lasted about a year.

When Matt was in high school, his mom married a third time to a man she remained married to for many years, and his mom had a third child. Overall, Matt had a positive relationship with his stepfather, but they weren't particularly close. His new stepfather drank excessively along with his mother. With two adults and three boys, the home became too small for the family, so Matt moved in with his grandmother next door.

In high school, Matt participated in a work-study program interning with the Washington State Department of Revenue, which piqued his interest in business. He really enjoyed his internship working for the state, and returning to state government became a long-term goal. He graduated with his diploma in 1994. He was an average student and wanted to attend college but couldn't afford it.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Starting at 16, Matt has been steadily employed most of his life. As a youth, he worked in a pizza parlor and Dairy Queen. He then went back to work as support staff for the State of Washington before moving into the private sector for several years.

### B. Matt returned to college in his mid-30s while working full time and raising two kids.

Around 2000, Matt began dating a long-term partner, and they had two children together. Matt had his first son when he was 26 years old, and his second son when he was 29 years old. The family of four lived together for about 12 years, and Matt was an active dad. He changed diapers, made lunches, helped with homework, and went to their sports games. He recalls feeling lost about how to be a father since he never had one and didn't want them to miss out on having a father like he did. When he and the boys' mother separated, she and Matt lived only a mile apart and shared custody.

In 2009, Matt began working for the Washington State Office of Administrative Hearings and continued working there until 2023, when he resigned due to this offense. Even though Matt didn't take the traditional route of attending college immediately after high school, he didn't give up on his education. He furthered his education by taking classes at community colleges when he could afford it. He'd work full-time during the day and study at night or on the weekends. In 2013, once the boys were out of the toddler phase and at school age, he decided to pursue a degree more seriously. He began taking multiple classes each semester through Western Governors University online to pursue a bachelor's degree in business management. Throughout that time, Matt was juggling being a father, a partner, a full-time employee, and a full-time college student. He graduated in May 2016, earning certifications along the way. His degree helped him earn a promotion at work to Management Analyst in 2017, which made him proud, especially after spending so many years in administrative roles.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

By 2017, both of his sons were in high school and more independent. As they approached adulthood, they needed him less and less. Wanting his boys to be successful and wanting to be an active dad to guide them, Matt reflects that he "overparented" them, making the boys push away. He had spent so many years trying to carefully allocate his time between home life, work, and school, he didn't have close friends. He had a strained relationship with his mother after years of frustration. To add to the distress, Matt's romantic partnership at the time was struggling. And now that he finished school, he had substantially more free time. The combination of factors left him feeling untethered, unconnected, and unhappy. Although he had gambled for many years, it became a daily habit in 2017. He didn't have anyone in his life to notice that he was gone every night after work or how quickly his paychecks would disappear.

### C. Matt's gambling addiction drove him to act in ways he never thought possible.

Before long, Matt was spending hours every night at the casino. Not only was he gambling his disposable income, but money intended for rent and bills. He drained his savings, and would eventually drain his retirement account. The compulsion to return to the casino was overwhelming, and out of desperation, he began stealing money from work. He created a couple of fake names and sent money as if they were vendors getting paid. The accounts linked to Matt's own personal information and accounts. He used the work credit card, which he had access to. And to support his gambling addiction, he abdicated many of the things he valued most, including his career. As his stress increased from his addiction and criminal actions, he spent more and more time at the casino to escape. Matt didn't have anyone close enough in his life to intervene.

In the midst of his addiction, he called the Gambler's Hotline that is in small print on casino brochures and lottery tickets. He thought it would be a crisis hotline, where he would talk to someone and they would talk him out of going to the casino that

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  night. Instead, he was told that he could make an appointment with a counselor but the
2  soonest intake appointment was 13 weeks away. In Matt's state of mind, it was like
3  telling someone with a life-threatening injury to call their doctor the following week.
4  He needed help immediately.

        **D.**      **Casinos are designed to create addiction.**

The relationship between gambling addicts and casinos is especially pernicious. The primary goal of casinos is to keep a person in the gambling seat for as long as possible. Casinos are carefully and systematically designed to do just that. Casinos purposely conceal the time of day; servers bring drinks directly to seat to prevent the gambler from getting up; gifts and vouchers ease the sting of loss; and slot machines overwhelm a person's view with "lights blinking, animated screens flashing, the simulated sound of clinking coins blaring across the floor." Ex. 2 at 18, John Rosengren, *How Casinos Enable Gambling Addicts*, The Atlantic, Dec. 2016, at 18.

The games themselves are designed for dopamine release. Research shows that it isn't the wins that release dopamine. Anticipation, "near misses," and even losses trigger dopamine. Jakob Linnet, *The Iowa Gambling Task and the three fallacies of dopamine in gambling disorder*, 4 Frontiers Psych 709 (2013), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC3792697/. Unlike slot machines of the past that relied on true luck, casinos use this information to program machines to increase near misses. The excitement and disappointment of near misses flood the brain with dopamine and keep people gambling for longer. Ex. 2 at 20.

Casinos also track their customers closely. Loyalty cards contain substantial data to mine information from, including "how long they play, how much they bet, how often they win and lose, what times of day they visit, and so on." Ex. 2 at 14. Cameras in the machines even "watch their faces and track their playing behavior." *Id*. The

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

abundance of data has "enabled casinos to specifically target their most reliable spenders, primarily problem gamblers and outright addicts." *Id*.

> Despite those customers' big losses – or rather, because of their losses—casinos lure them to return with perks that include complimentary drinks and meals, limo service, freebies from the casino gift shop, golf excursions for their nongambling spouses, and in some cases even first-class airfare and suites in five-star hotels.

*Id*. at 14-15. "The business plan for casinos is based on the addicted gambler." *Id*. at 15. Gamblers who bet and lose substantial amounts of money "become the casinos' most sought-after repeat customers, the ones to whom they market most aggressively with customized perks and VIP treatment." *Id*. at 15. This was Matt. The casino knew exactly how much time he spent there, how much he bet each hand, how much he lost, his betting patterns, and how to get him to come back to lose more money.



Ex. 3. While these numbers are not true losses or wins[1], it contains significant information about how much time Matt spent there. Not only did Matt receive plenty of vouchers and gifts to keep him returning and playing, based on Matt's gambling habits, the casino would offer him $1000 of "free money" for a week to gamble with. Casinos don't offer that kind of money to the casual gambler – it's reserved for their top customers. The casino knew how much money Matt was losing and prolonged it for as

---

[1] These numbers can be deceptive without further explanation. If a person decides to only spend $100 at a casino, they could play with that $100 for hours, depending on how they bet. Each individual bet gets added up over the night, so the "total bet" for the night could be $1000, even though the person never took out more than the original $100 from their bank account.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

long as possible. It is also telling that the casino didn't ban him until July 20, 2024 – after he had already stopped gambling on June 30, 2024, and after newspapers published an article about the offense on July 8, 2024. Ex. 6; Jim Brunner and Clair Withycombe, *WA state worker accused of misappropriating $900k had earlier bankruptcies*, The Seattle Times, July 8, 2024, available at https://www.seattletimes.com/seattle-news/politics/wa-state-worker-accused-of-moving-900k-to-his-accounts-had-earlier-bankruptcies/.

     Unlike the casino, Matt wasn't keeping track. He didn't have a spreadsheet. He had no master plan. Learning that he stole over $878,000 stunned and overwhelmed him. To be clear, this doesn't absolve Matt of his choices and criminal conduct. He is still responsible for his actions and is responsible for ensuring that he addresses his addiction, that he stays away from gambling, and repays the money. But the predatory nature of casinos should not be ignored when considering how the loss amounts get so high in cases like this.



DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 8

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1 ▮
2 ▮
3 ▮
4 ▮
5     After resigning from the State, he quickly got a new job as a Project Manager for TransBlue. His embezzlement stopped, fortunately. But for the next year, he kept gambling away his paychecks and gambled away his retirement savings. White-knuckling his way through it, he finally stopped gambling and last stepped foot in a casino at the end of June 2024. He got into general counseling, but in October 2024, TransBlue unexpectedly laid off employees and declared bankruptcy. Matt found himself without health insurance and could not afford to continue treatment for a couple months. At 49 years old, and for the first time since he was 16, he found himself unemployed. Though he was no longer gambling, he needed to pay rent and utilities while he searched for a new job, and received unemployment based on his time at TransBlue. Currently, he is driving for ride-share companies while this case is resolved.

16 ▮
17 ▮
18 ▮
19 ▮
20 ▮
21 ▮
22 ▮
23 ▮
24 ▮
25 ▮
26 ▮

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 9

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

▓▓▓▓▓▓▓ He also attends Gamblers Anonymous meetings each week.

Since getting established with Mr. Green, Matt has met others who understand what he was going through in the depths of the addiction. He has realized that he is far from alone in this addiction, yet it is much more hidden than other types of addiction that have more obvious symptoms. Unfortunately, there are far fewer resources to help gamblers than those with substance use disorders. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a dozen certified gambling counselors in the entire state of Washington. *See* Ex. 4 at 21 (list of certified gambling counselors in Washington). Matt has been grateful to find a provider with extensive knowledge of gambling addiction and is fully committed to treatment.

Since the offense came to light, Matt told his family what he had done and has rebuilt a relationship with his mother. While they have different addictions, they understand each other's struggles further and have a more honest foundation. Matt also wants to create a new career for himself. He deeply regrets losing the one he had and knows he likely cannot return to a similar field. He wants a career that is meaningful and will work hard to repay restitution to the State. After his own struggles and seeing firsthand how few resources there are for people struggling with gambling addiction, he has looked into becoming a certified gambling counselor to help others like him. He understands that he needs more time in counseling before he can take on that role, but he wants to make things right by not only paying restitution, but helping others who need dire help with whom he can relate.

## II.     ARGUMENT

The defense recommends a sentence of 5 years of probation with the agreed restitution, 12 months of home-electronic monitoring, 250 hours of community service, and continuing counseling.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 10

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

A. **Community-based supervision with a substantial restitution order are sufficient to provide just punishment, particularly given additional collateral consequences.**

In fashioning a sentence that is sufficient "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," 18 U.S.C. § 3553(a)(2)(A), there are many forms of sentences available, § 3553(a)(3). Here, the offense was certainly serious. The recommended sentence along with collateral consequences amount to a serious sanction as well. A sentence of probation with a substantial amount of community service will allow him to make amends to the taxpayers by giving back directly to the community, rather than requiring substantial costs from taxpayers for incarceration. See PSR ¶ 113 (annual cost to taxpayers for imprisonment $51,711; annual cost to taxpayers for supervision by probation officer $4,742).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Matt is punishing himself every day.

In addition to fraud, Matt also pleaded guilty to filing a false tax return and agreed to pay $240,247 to the IRS. This, in itself, is an additional penalty that Matt has accepted and should be considered by the Court. Federal courts see many fraud cases with high loss amounts. The United States Sentencing Commission (USSC) data shows that there were 5,312 fraud/embezzlement cases nationwide in 2024, which is comparable to the number of fraud cases in each of the last 5 years. USSC, Interactive Data Analyzer (selected for crime type: fraud/theft/embezzlement) https://ida.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboards.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 11

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Money that a person earns through fraud is considered "income" for the purposes of federal tax. It doesn't matter that the money was gained illegally. Under tax laws, fraudulent and embezzled money must be included in a person's income tax filing. If it is not included, that person is filing a false tax return. But it is rare for a person to plead guilty to both fraud and filing a false tax return, even for certified public accountants who commit a similar offenses. The USSC data shows that in 2024, there were only 440 cases nationwide for tax crimes, and the type of tax crimes cover more than just filing a false tax return. USSC, Interactive Data Analyzer (selected for crime type: tax) https://ida.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboards. This creates several consequences for Matt that others in his situation have not been penalized with.

First, it increases his guidelines by one offense level compared to others guilty of the same conduct. Second, not only has Matt agreed that he needs to pay $878,115 in restitution, but he agrees he owes an additional $240,247 to the United States Treasury. Third, by pleading guilty to willfully filing a false tax return, he has accepted additional exposure to civil tax penalties from the IRS, such as 26 U.S.C. § 6663, which would add an additional financial penalty of 75% of the portion underpaid. Since the criminal and civil departments of the IRS work independently, a global resolution with the IRS was not possible.

Matt has been working with defense counsel and the government to come to a resolution since December 2024, when undersigned counsel was appointed to represent him pre-indictment. Always intending to plead guilty and accept responsibility for his conduct, Matt waived his right to an indictment via grand jury and pleaded guilty to a

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 12

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

criminal information.  Probation will allow Matt to immediately begin paying restitution to the State and IRS, along with any other civil penalties that may be levied.[2]

**B.    Community-based supervision will provide the best deterrence from future criminal conduct, while prison will impede rehabilitation and treatment.**

A sentence that allows Matt to remain in counseling with one of the few and coveted certified gambling counselors will best achieve the goal of deterrence. 18 U.S.C. § 3553(a)(2)(B). ███████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████ Matt has been working with him consistently and steadily for eight months, and they have made fantastic progress, but he still has a way to go. Taking him out of specialized counseling and putting him in prison would only set him back. ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█ Additionally,

> [H]is risk of recidivism is best mitigated through continued access to evidence-based gambling disorder treatment, mood and anxiety-focused psychiatric support, and structured psychological support.

---

[2] Since the State was insured against such misconduct, it has been compensated by the insurance company and made financially whole. Matt technically owes restitution to the insurance company, which is prepared to file a civil suit against him. Defense counsel has had limited contact with counsel for the insurance company.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 13

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

> With such interventions, Mr. Ping is likely to continue demonstrating accountability and engage productively with rehabilitation goals. His prognosis is favorable if provided with stable mental health care, vocational reengagement, and recovery-focused treatment opportunities.

*Id*. at 18-19. If incarcerated, it is highly unlikely that Matt will receive any one-on-one counseling, let alone for gambling addiction.

Conversely, a prison sentence will only thrust him into an environment where gambling is a way of life. Gambling may not be "allowed" in BOP, but betting is standard protocol in prison. Robert Jarvis, *Gambling in American Prisons*, 20 Gaming L. Rev. & Econ. 645, 665 (2016) ("gambling in prison is pervasive"). Not only is it a form of entertainment to help pass the time by betting on sports games or cards, inmates rely on gambling to supplement their food stores with commissary items or additional phone minutes to speak to loved ones. With gambling part of the culture, it will be exceedingly difficult to decline. Removing Matt from counseling for gambling addiction and placing him into an environment where gambling is ubiquitous does not promote deterrence.

C.   **A custodial sentence is not necessary to protect the community.**

Matt does not pose a physical risk to anyone and is not a danger. Even for financial risk, Matt's embezzlement and addiction were discovered over two years ago. He has been in the community the entire time without oversight. While the past two years have not been easy, he has fought his addiction on his own and stopped gambling, and then found a counselor for additional support.

If he were an ongoing danger, he would not have stayed in the community this entire time. He has been compliant and successful on pretrial supervision. The probation office states in its recommendation, "Based on Mr. Ping's conduct while on pretrial supervision, it does not appear that he poses a continued financial threat to the community." If placed on probation, the Probation Office would ensure that he abides

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 14

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

by home detention, pays restitution, stays engaged in counseling with appropriate providers, and will monitor his financial accounts and credit report to guard against relapse or financial trouble. Furthermore, with a sentence of probation, the Court retains full discretion to re-sentence Matt if needed. The threat of prison does not disappear with a sentence of probation.

### D.  Given the aggravating factors in other cases, the requested sentence will not create disparity.

In comparing other cases for disparity, there are notable aggravating factors in other cases that are not present here.

- *United States v. Sherman*, CR24-5252 TMC – sentenced to 12 months and a day
    - Mr. Sherman embezzled over $665,000 from his employer. Sherman was a Certified Public Accountant (CPA), who had to pass a Washington-approved exam to ensure understanding and compliance with financial laws. CPAs are also mandated to adhere to a code of ethics and professional conduct and may require a fiduciary duty to clients. Part of his job was to oversee all financial operations and create controls to prevent fraud. See dkt. 26 (government sentencing memorandum) at 1. The fraud nearly bankrupted the business. *Id.* at 5. Like Matt, Mr. Sherman had a gambling addiction and agreed to pay restitution to the IRS. Unlike Matt, Mr. Sherman's plea agreement did not include the charge of filing a false tax return. The government requested 18 months' incarceration.
- *United States v. Olobia*, CR19-073 RSL – sentenced to 12 months and a day
    - Mr. Olobia embezzled $1.5 million over five years from his employer. Dkt. 30 at 2-3. Olobia grew up privileged with a good childhood, attended private schools, was a star athlete in college, and even represented Nigeria

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 15

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

at the Olympics. *Id*. at 4. He played football, including stints with two NFL teams. Unlike Matt, Olobia did not have a gambling addiction. Based on court documents, there was no apparent reason for the scheme "other than that Olobia wanted more money than he was already earning." *Id*. at 5. Further, Mr. Olobia absconded from pretrial supervision. *Id*. He pled guilty to wire fraud. The government requested a sentence of 18 months' incarceration.

- *United States v. Thompson*, CR19-159 RSL – sentenced to 5 years' probation, 3 years electronic monitoring, 50 hours community service
  - Ms. Thompson hacked dozens of computers from various companies and exploited security vulnerabilities causing a $40.7 million loss. She elected to go to trial and was found guilty. According to the government, the crimes were "fully intentional and grounded in spite, revenge, and willful disregard for the law. She exhibited a smug sense of superiority and outright glee while committing these crimes." Dkt. 377 at 10. The government requested 84 months' incarceration.
- *United States v. McDonagh*, CR24-120 JHC – 18 month's incarceration
  - Mr. McDonagh and his co-defendant pretend to be contractors, telling homeowners they needed urgent home repairs and charging "exorbitant sums" of money, including elderly victims. Dkt. 56 at 1. He defrauded people out of $958,000. "Using this scam, the McDonaghs stole $435,000 from Victim 1 in King County, including more than $350,000 from his retirement account." *Id*. at 2. Mr. McDonagh had 18 prior convictions. The government requested a sentence of 24 months for wire fraud.
- *United States v. Nguyen*, CR21-182 RSL – 3 years' probation, 6 months electronic monitoring

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 16

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

- - o Mr. Nguyen committed wire fraud while employed, causing over $500,000 in losses. Dkt. 36 at 2. He had a criminal history of fraud-related offenses including writing bad checks, theft of wallet, fraudulent use of a credit card, theft of vehicle, and multiple counts of forgery. *Id*. at 4. Like Matt, he suffered from a gambling addiction. Dkt. 41 at 2. The government requested 18 months' incarceration.
- *United States v. Davie*, CR22-5189 BHS – 18 months' incarceration[3]
  - o Mr. Davie was a bank manager and stole $1,279,840 from 8 victims, specifically targeting elderly and vulnerable customers. Dkt. 54 at 2. Three victims had some form of dementia, two struggled with English, and one couldn't read or write. *Id*. He pled guilty to bank fraud. The government recommended 24 months' incarceration.

Matt knows that he violated the trust of many. Not only his coworkers, but the citizens who expect government workers to use their tax dollars wisely. Fortunately, because the state was insured, it recouped the money relatively quickly. Now, Matt owes the insurance company. Many others convicted of fraud sadly target or substantially harm individuals who cannot recoup the money. Matt did not target individual people, steal identities, or siphon people's retirement accounts. Because this was fueled by addiction and not greed, Matt doesn't have anything to show for it. He did not buy a home with the money he won gambling; he didn't take fancy vacations to exotic locations; he didn't buy designer clothes or jewelry. He didn't even pay off his

---

[3] The 18 months' incarceration is for bank fraud. Mr. Davies received an additional 24 months' incarceration for aggravated identity theft, under 18 U.S.C. § 1028A, which carries a mandatory 24-month sentence. Section 1028A(b)(3) forbids courts from considering the mandatory 24 months when sentencing defendants on other counts. Thus, the 18 months on bank fraud is independent of the mandatory sentence.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 17

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

own bills. Since casinos are designed so that the house always wins, Matt lost more money than he ever won.

## III. CONCLUSION

In the last two years, Matt ceased his illegal activity, stopped gambling, entered into counseling specifically for gambling addiction, and is planning for a future so he can repay restitution and rectify the harm as best he can. Considering the § 3553(a) factors and the directive to determine a sentence that is sufficient but not greater than necessary to effectuate the goals of sentencing, the defense respectfully requests a sentence of 5 years' probation, 12 months of electronic monitoring, 250 hours of community service, and restitution.

DATED this 4th day of September 2025.

Respectfully submitted,

s/ *Lindsay J. McCaslin*
Assistant Federal Public Defender
Attorney for Matthew Randall Ping

DEFENSE SENTENCING MEMORANDUM
(*United States v. Ping*, CR25-5137-TMC) - 18

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710